IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| RONALD CHILDERS, on behalf of Himself and all others similarly situated | ) ) ) |
| Plaintiff, | ) ) Case No. 18-457 |
| v. | ) ) ) |
| CSL FINANCIAL, LLC., | ) ) |
| Defendant. | ) |

## COMPLAINT

### PRELIMINARY STATEMENT

Plaintiff obtained a loan from CSL Financial, LLC, ("CSL") on January 10, 2018. The loan was a consumer transaction, as it was used to purchase a manufactured home for the Childers' personal use. Because the loan at issue was a "Higher-priced mortgage loan," as that term is defined by Regulation Z, CSL was required to make additional disclosures indicating the value of the home. CSL also failed to properly disclose the due dates and number of payments required to satisfy the loan. These failures are violations of the Truth-in-Lending Act. This case is brought individually and on behalf a class of similarly situated persons.

### JURISDICTION AND VENUE

1. This action includes claims which arise under the statutes of the United States, including the Truth-in-Lending Act, 15 U.S.C. § 1601, et seq., ("TILA"), and Regulation Z.

2. This Court's jurisdiction is conferred by 28 U.S.C. § 1331.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because CSL regularly conducts business within this District and the events complained of occurred in this District.

## THE PARTIES

4. Plaintiff Ronald Childers is over 19 years of age and a resident of Baldwin County, Alabama.

5. CSL is a limited liability company, organized and existing under the laws of the State of Alabama, is registered and authorized to do business in the State of Alabama with its principal place of business in Birmingham, Alabama.

6. Part of CSL's business is the financing of consumer debt, including debt incurred for the purchase of manufactured homes.

7. In addition to his individual claim, Plaintiff asserts a claim pursuant to Rule 23, *Federal Rules of Civil Procedure* on behalf of all others similarly situated throughout the United States for damages and other relief for violations of the Truth-in-Lending Act, 15 U.S.C. § 1601, et seq., ("TILA"). At all relevant times CSL had a routine practice of failing to provide proper TILA disclosures.

## FACTUAL ALLEGATIONS

8. Plaintiff purchased a 2017 RiverBirch North River NRN-1835 Manufactured Home, on January 10, 2018.

9. The total price of the home was $61,368.40.

10. After the down payment of $16,000, Mr. Childers borrowed the remainder, $45,368.40, from CSL.

11. The Truth-in-Lending Act disclosure, filed herewith as Exhibit One and given to Mr. Childers, reflects a 7.739% APR.

12. Mr. Childers' loan was a closed-end loan secured by his principal residence.

13. According to the Rate Spread Calculator published by Consumer Financial Protection Bureau, the loan has a Rate Spread of 4.289% over the applicable Average Prime Offer Rate. See Exhibit Two.

14. Regulation Z, at 12 C.F.R § 1026.35(a)(1), defines a "Higher-priced mortgage loan" as follows:

> **(1)** "Higher-priced mortgage loan" means a closed-end consumer credit transaction secured by the consumer's principal dwelling with an annual percentage rate that exceeds the average prime offer rate for a comparable transaction as of the date the interest rate is set:
>
> **(i)** By 1.5 or more percentage points for loans secured by a first lien with a principal obligation at consummation [.]

15. Plaintiff's loan was, therefore, a "Higher-Priced" mortgage loan.

16. TILA at 15 U.S.C. § 1639h(a) states, "A creditor may not extend credit in the form of a higher-risk mortgage to any consumer without first obtaining a written appraisal of the property to be mortgaged prepared in accordance with the requirements of this section[.]"[1]

17. TILA and its implementing regulations require CSL to give borrowers a copy of a valuation <u>three days prior</u> to consummation of the transaction.

18. Specifically, Regulation Z at 12 C.F.R. § 1026.35(c)(2)(viii)(B)(1)-(3) states that a lender can meet this obligation by giving borrowers any of the following:

> (1) For a new manufactured home, the manufacturer's invoice for the manufactured home securing the transaction, provided that the date of manufacture is no earlier than 18 months prior to the creditor's receipt of the consumer's application for credit;

---

[1] When the regulation was adopted the CFPB decided to use the term "higher-priced mortgage loan," rather than "higher-risk mortgages." See 78 Fed. Reg. 10,367, 10,369 (Feb. 13, 2013).

    (2) A cost estimate of the value of the manufactured home securing the transaction obtained from an independent cost service provider; or

    (3) A valuation, as defined in § 1026.42(b)(3), of the manufactured home performed by a person who has no direct or indirect interest, financial or otherwise, in the property or transaction for which the valuation is performed and has training in valuing manufactured homes.

  19.  Plaintiff not was given any of the above.

  20.  In addition, Exhibit One, a copy of the Truth-in-Lending Disclosure Statement given to the plaintiff, is deficient.

  21.  TILA, at 15 U.S.C. § 1638(a), requires certain disclosures in closed-end transactions.

  22.  15 U.S.C. § 1638(a)(6) requires disclosure of the number, amount, and due dates or period of payments scheduled to repay the total of payments.

  23.  TILA, at 15 U.S.C. § 1638(b), requires certain disclosures to "be conspicuously segregated from all other terms, data, or information provided in connection with a transaction, including any computations or itemization[.]"

  24.  15 U.S.C. § 1638(b)(1) requires that the disclosures required under subsection (a) "shall be made before the credit is extended."

  25.  Exhibit One contains the amount and period (monthly) of the payments, but it does not contain number of payments or due dates.

  26.  CSL failed to conspicuously segregate from all other terms, data, or information provided in connection with the transaction, the due dates and number of payments scheduled to repay the total of payments.

27. Through TILA, Congress conferred to consumers a concrete and legally protected interest in the receipt of accurate information regarding terms of credit, including the dates on which credit is extended, payment due dates and the dates late fees are incurred.

28. Moreover, Congress conferred to consumers the right to bring a civil action to address a creditor's failure to comply with the TILA disclosure requirements.

## CLASS ACTION ALLEGATIONS

29. Plaintiff brings this action on behalf of himself and a class of other individuals similarly situated.

30. The class is defined as:

All borrowers who, from the beginning of period starting one year from the date of the filing of this Complaint until a class is certified herein, who obtained a closed-end loan from CSL, whose Truth-in-Lending Act disclosure forms did not contain the number or timing of payments scheduled to repay the obligation and/or whose loan was a was a higher cost loan and they did not receive an appraisal or valuation of the dwelling used as collateral at least three days prior to the transaction.

31. The following people are excluded from the class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) CSL its subsidiaries, parents, successors, predecessors, and any entity in which CSL, or its parents have a controlling interest and its current or former employees, officers, and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) the legal representatives, successors, or assignments of any such excluded persons; and (5) Plaintiff's counsel and CSL's counsel.

32. Numerosity: The members of the class are so numerous that joiner for all members individually is impracticable. The exact number of the class members can be determined only by appropriate discovery from CSL. Plaintiff believes, however, that the class exceeds 1,000 persons.

33. Commonality and Predominance: There are many questions of law and fact common to the claims of Plaintiff and the class. Those questions predominate over any questions that may affect individual members of the class. Common questions for the class include, but are not limited to, the following:

➢ Does CSL's conduct violate TILA;

➢ Was the conduct of CSL and/or its agents willful;

➢ Are Plaintiff and class members entitled to statutory damages based on CSL's conduct?

34. Typicality: Plaintiff's claims are typical of the claims of other members of the class in that Plaintiff and the members of the class had a statutory right to receive accurate information about their accounts and sustained damages arising out of CSL's uniform conduct.

35. Adequate Representation: Plaintiff will fairly and adequately represent and protect the interest of the class and has retained counsel competent and experienced in Class Actions. Plaintiff has no interest antagonistic to those of the class and CSL has no defenses unique to Plaintiff.

36. Policies Generally Applicable to the Class: This Class Action is appropriate for certification because CSL has acted, or failed to act, on grounds generally applicable to the class as a whole, thereby allowing the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the class and making final relief appropriate with respect to the class as a whole. CSL's practices apply to and affect the members of the class uniformly, and Plaintiff's challenge of those practices hinges on CSL's conduct with respect to the class as a whole, not on facts or law applicable only to Plaintiff.

37.     Superiority: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy and because joinder of all parties is impracticable. The damages suffered by the individual members of the class will likely be relatively small. Thus, it would be virtually impossible for the individual members of the class to obtain effective relief from CSL's misconduct. Even if members of the class could sustain such individual litigation, it would still not be preferable to a Class Action because individual litigation would increase the delay and expense for all parties. By contrast, a Class Action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale and comprehensive supervision by a single court.

## COUNT ONE

## FEDERAL TRUTH IN LENDING ACT

38.     Plaintiff and the other members of the class adopt and re-allege above paragraphs of this complaint.

39.     TILA requires creditors that make closed-end consumer loans to make the disclosures as stated above.

40.     CSL did not make the all the required disclosures to Plaintiff or class members.

41.     Plaintiff and class members have been deprived of information they were entitled to under TILA.

WHEREFORE, the premises considered, Plaintiff prays that this Court grant Plaintiff and the class the following relief:

(a) An Order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court

      deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers representing Plaintiff as counsel for the Class;

(b) Statutory damages pursuant to 15 U.S.C. §1640(a)(2);

(c) Litigation costs and attorneys' fees; and

(d) Any other relief as may be just and proper.

DATED this the 23rd day of October 2018.

Respectfully Submitted,

*/s/ Earl P. Underwood, Jr.*
EARL P. UNDERWOOD, JR
KENNETH J. RIEMER
Attorneys for the Plaintiff
Underwood & Riemer, P.C.
21 South Section Street
Fairhope, AL 36532
251-990-5558 (telephone)
251-990-0626 (facsimile)
epunderwood@alalaw.com
kjr@alaconsumerlaw.com

**DEFENDANT TO BE SERVED BY CERTIFIED MAIL AS FOLLOWS:**

CSL, LLC, N.A.
C/O Corporation Service Company, Inc.
641 South Lawrence Street
Montgomery, Alabama 36104